UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OMAR R.,

              Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

              Defendant.

Case No. 22 C 3784

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Omar R. moves for reversal and remand of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Commissioner responds, arguing that the Court should affirm the ALJ's decision. For the following reasons, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Omar filed his application for DIB in May 2019, alleging that he became disabled on September 28, 2018, when he was thirty-four years old due to multiple physical and mental impairments: fibromyalgia, tendinitis, Achilles rupture, migraines, irritable bowel syndrome, memory impairment, malaise, fatigue, asthma, post-traumatic stress disorder, depression, carpal tunnel, anterior crural nerve paralysis, and lumbosacral/cervical strain. Omar graduated from high school and obtained an associate's degree. Before his alleged disability, Omar served in the U.S. Army from 2007 to 2011. He was deployed to Afghanistan from August 2008 through September 2009 with the Army National Guard. Omar was involved in two car accidents, one in September 2018 and the other in May 2019. In January 2020, the

Department of Veterans Affairs found Omar to have 100 percent service-connected disability: migraines 50 percent, post-traumatic stress disorder 50 percent, sleep apnea 50 percent, fibromyalgia 40 percent, irritable colon 30 percent, tinnitus 10 percent, paralysis of anterior crural nerve 10 percent, lumbar or cervical strain 10 percent, and allergic or vasomotor rhinitis 10 percent. (R. 1266-68). He also has past work experience as a correction officer, parole officer, and a truck driver.

The administrative law judge ("ALJ") issued a written decision on April 27, 2022, denying Omar's application. (R. 17-42). The ALJ concluded that Omar's obesity, degenerative disc disease of the lumbar spine, and degenerative disc disease of the cervical spine were severe impairments but did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15-16, 19. The ALJ found Omar's migraines, traumatic brain injury, asthma, gastroesophageal reflux disease, irritable bowel syndrome, linguistic impairment, carpal tunnel syndrome, Achilles rupture, sleep apnea, major depressive disorder, and anxiety disorder to be non-severe. *Id*. at 20-26. The ALJ further concluded that Omar's fibromyalgia was not a medically determinable impairment, but even if it was, it would be non-severe. *Id*. at 24-25. Under the "Paragraph B" analysis, the ALJ found that Omar had mild limitations in the four functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at 27-28. The ALJ then determined that Omar had the residual functional capacity ("RFC") to perform a reduced range of light work except he: (1) can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; (2) can occasionally climb ladders, ropes, or scaffolds; (3) can work in an environment with no more than moderate noise levels (per the Dictionary of Occupational Titles description); and (4) should avoid concentrated exposure to dusts, fumes, gases, or poor ventilation. *Id*. at 32. Given

this RFC, the ALJ concluded that Omar was not disabled because he is capable of performing his past relevant work as a probation and parole officer as generally performed. *Id.* at 39. The ALJ alternatively concluded that Omar could perform jobs existing in significant numbers in the national economy, such as cleaner, housekeeping, marker, and mail clerk at the light exertional level and address clerk, document preparer, and circuit board assembler at the sedentary exertional level. *Id.* at 39-40.

## II. <u>DISCUSSION</u>

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d

936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ----, 139 S.Ct. 1148, 1154 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Omar raises several challenges to the ALJ's decision, but the Court need only address one. Omar contends that the ALJ failed to evaluate his non-severe mental impairments in her RFC analysis. The Court agrees and remands on this basis.

The RFC is an assessment of a claimant's "ability to perform work-related activities despite his limitations." *Surprise v. Saul*, 968 F.3d 658, 661 (7th Cir. 2020). "[A]ll impairments—both severe and nonsevere—are considered in the RFC analysis." *Corkle v. Kijakazi*, 2023 WL 179983, at *3 (Jan. 13, 2023); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (in assessing the RFC, "the ALJ must [] consider the limitations imposed by all impairments, severe and non-severe."). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010).

At step two, the ALJ found that Omar's medically determinable mental impairments of major depressive disorder and anxiety disorder were nonsevere but nonetheless caused mild limitations in: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (R. 25-28). At the end of her step two finding, the ALJ stated:

> The limitations identified in the "paragraph B" criteria *are not a residual functional capacity assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment*. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

*Id.* at 29 (emphasis added). However, when determining Omar's RFC, the ALJ did not mention Omar's mental impairments, let alone make a "detailed assessment" of what, if any, restrictions his limitations in the four functional areas placed on his ability to work. (R. 32-29). Nor did the ALJ account for Omar's mild mental limitations by including any mental restrictions in the RFC or explain why she omitted any such restrictions in the RFC. *Id.*

The ALJ's failure to discuss Omar's non-severe depression and anxiety and mild mental limitations in the four Paragraph B functions in formulating the RFC was reversible error. As the ALJ recognized, "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment;" instead, a mental RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). "Even if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A. v. Kijakazi*, 2022 WL 2758001, at *4 (N.D. Ill. July 14, 2022) (emphasis in original) (internal quotation marks omitted). For this reason, numerous "courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four." *Dianne O. v. Kijakazi*, 2023 WL 3864589, at *4 (N.D. Ill. June 7, 2023) (collecting cases). Similarly here, without any explanation as to how Omar's mental limitations factored into the RFC determination, the Court cannot trace the path of her reasoning for not

including mental limitations in the RFC. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (ALJ must build a "logical bridge" from the evidence to her conclusion); *Iora P. v. Berryhill*, 2019 WL 1112272, at *3 (N.D. Ill. March 11, 2019).

The Commissioner contends that the "ALJ's fulsome, six-page discussion of [Omar's] mental abilities" at step two "amply explains why the RFC contained no mental allowances." Doc. 19 at 5.  It is true that a reviewing court may read an ALJ's decision holistically, such that "the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a basis for remand." *Dianne O.*, 2023 WL 3864589, at *4 (citing *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021)).  However, in this instance, "the ALJ's step two discussion cannot justify the RFC because the ALJ expressly stated that the discussion was not an RFC assessment and that the RFC 'require[d] a more detailed assessment." *Id*; *Anthony W. v. Kijakazi*, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) ("While the Court generally reads the ALJ's decision as a whole, the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment.").  The ALJ was required do more than discuss Omar's restrictions in isolation at Step 2; she also had to consider them in combination with his other impairments in the RFC analysis. *Charles M. v. Saul*, 2020 WL 231080, at *7 (N.D. Ill. Jan. 15, 2020).  Thus, "the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3.

Finally, the Commissioner does not argue that this error was harmless.  In fact, "[t]his type of error is particularly problematic when, as here, an ALJ finds that a plaintiff can perform skilled work." *Patricia A. G. v. Kijakazi*, 2023 WL 2683470, at *5 (N.D. Ill. March 29, 2023); *Anthony W.*, 2022 WL 1062334, at *4; *Iora P.*, 2019 WL 1112272, at *4.  Accordingly, the ALJ's failure to address the mild limitations created by Omar's major depressive disorder and anxiety was not

harmless because the ALJ's step four determination was based on her finding that Omar had the ability to perform his skilled work as a probation and parole officer. (R. 39).

The Court recognizes that the VE testified that Omar could perform other unskilled jobs at both the light and sedentary exertional levels if he was also limited to simple, routine tasks involving simple work related decisions, occasional interaction with coworkers and supervisors, should not be required to work with coworkers in a collaborative environment or participate in team tasks, and no more than incidental interaction with the public. (R. 76-78). But "[e]ven a claimant's ability to perform unskilled work may be impacted or precluded by difficulties with memory and concentration." *Mark M. v. Kijakazi*, 2022 WL 17960687, at *5 (N.D. Ill. Dec. 27, 2022) (quoting *Kathy A.*, 2022 WL 2758001, at *4). Consequently, Omar's difficulties with memory and concentration may still impact his ability to perform the unskilled work. *Milton v. B. v. Kijakazi*, 2023 WL 4134812, at *7 (N.D. Ill. June 22, 2023).[1] Without an analysis of Omar's mental RFC from the ALJ, the Court does not know the answer to this issue. Finally and relatedly, "remand is [] required because the ALJ failed to consider the aggregate impact of all of [Omar's] severe and non-severe impairments" when assessing his RFC. *Thomas G. v. Kijakazi*, 2022 WL 4234967, at *6 (N.D. Ill. Sept. 14, 2022); *Charles B. v. Saul*, 2019 WL 3557055, at *4 (N.D. Ill. Aug. 1, 2019).

---

[1]     Moreover, it is unclear how the ALJ alternatively determined at step five that simple, routine tasks with occasional interaction with coworkers and supervisors and no more than incidental interaction with the public adequately accommodates Omar's mental limitations. Because there was no evaluation of Omar's depression and anxiety and mild mental limitations in the RFC analysis and the ALJ rejected all of the medical opinions concerning the limitations caused by Omar's mental impairments at step two, the Court is unable to discern how the ALJ arrived at her alternative findings for step five. (R. 29-30, 39-40). In other words, the Court is left without a logical bridge between the evidence and the ALJ's step five conclusion. As a result, the Court cannot say that the ALJ's alternative step five finding rests on substantial evidence.

Accordingly, on remand, the ALJ shall consider the mental restrictions that Omar has and explain their effect on his ability to sustain full-time work. "If the ALJ intend[s] to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, she [is] obligated to explain how she did so. Conversely, if the ALJ believe[s] that the mild mental limitations did not merit a non-exertional limitation in the RFC, she [is] obligated to explain that conclusion." *Thomas G.*, 2022 WL 4234967, at *5. Further, on remand, the ALJ shall reevaluate Omar's RFC, considering all of the evidence of record, including the combined impact of his severe and non-severe physical and mental impairments on his ability to work and shall explain the basis of her findings in this regard. *Iora P.*, 2019 WL 1112272, at *5.

Based on the foregoing analysis, the ALJ's failure to discuss Omar's non-severe mental impairments and the combined impact of his severe and non-severe impairments when determining his RFC warrants remand. The Court declines to address Omar's additional challenges to the ALJ's decision. However, Omar shall raise his arguments regarding any other alleged errors by the ALJ on remand. 20 C.F.R. § 404.983(a) (on remand, "any issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in the case.").

### III.  CONCLUSION

For the reasons stated above, Plaintiff's request for reversal and remand [11] is granted in part and the Commissioner's motion for summary judgment [18] is denied. The decision of the Commissioner is reversed, and this case is remanded for further proceeding consistent with this Memorandum Opinion.

**SO ORDERED.**

Dated:  September 14, 2023

Sunil R. Harjani
United States Magistrate Judge

8